# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SERENA LOUISE HOLDEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. CIV-19-97-SPS |
| | ) |
| **COMMISSIONER of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The claimant Serena Louise Holden requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-nine years old at the time of the administrative hearing (Tr. 45). She has a high school education, some college, and has worked as a nurse aide, corrections officer, and telemarketer (Tr. 40, 49). The claimant alleges she has been unable to work since an amended onset date of July 5, 2011, due to lupus, lung cancer, migraine headaches, degenerative joint disease, anemia, arthritis, fibromyalgia, deep vein thrombosis, depression, and weakness (Tr. 161, 164).

## Procedural History

In June 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ B.D. Crutchfield held an administrative hearing and determined that the claimant was not disabled in a written decision dated February 23, 2018 (Tr. 19-27). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found the claimant retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) (Tr. 22). The ALJ then concluded that, through the claimant's date last insured, June 30, 2012, she was not disabled because she could return to her past relevant work as a nurse aide, corrections officer, and telemarketer (Tr. 37-38).

## Review

The claimant contends that the ALJ erred by failing to: (i) make proper findings at step two, (ii) account for her severe obesity and deep vein thrombosis in formulating the RFC, (iii) consider the combined effect of her nonsevere impairments when formulating the RFC, (iv) properly evaluate her subjective symptoms of pain, (v) pose a hypothetical question to the VE containing all of her limitations, and (vi) support her decision with substantial evidence. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of obesity and deep vein thrombosis, the nonsevere impairments of chronic anemia, migraines, osteoarthritis, and depression, but that her alleged lupus, fibromyalgia, lung cancer, lumbar degenerative disc disease, and degenerative joint disease were not medically determinable during the relevant period (Tr. 21-22). The relevant medical record reveals that claimant sought emergent care for pain, swelling, and redness in her right leg on June 30, 2011 (Tr. 857-75). A venous duplex of the claimant's right leg performed that day revealed a deep venous thrombosis extending from the common femoral vein through the popliteal vein and anticoagulation therapy was initiated (Tr. 858, 875). On July 6, 2011, the claimant underwent a successful pharmacomechanical thrombolysis with IVC filter placement on her right leg (Tr. 825-39). At a follow-up appointment on July 20, 2011, the claimant reported no pain since her procedures but that she still had some swelling in her right calf and ankle (Tr. 781). By March 2012, the claimant had completed her anticoagulation therapy and all symptoms of her right leg deep vein thrombosis had resolved (Tr. 757).

The claimant's IVC filter was successfully removed on March 29, 2012, however, a catheter fragment remained lodged in her heart and it was successfully removed the following day (Tr. 703-07).

On April 3, 2012, the claimant reported pain and swelling in her left leg, noting her symptoms were similar to those she had when she was first diagnosed with a deep vein thrombosis in her right leg (Tr. 655). An ultrasound of the claimant's left leg performed the following day revealed a completely occlusive left leg deep venous thrombus extending from the superficial femoral vein to the left popliteal vein (Tr. 660). On April 5, 2012, the claimant underwent a successful left iliofemoral venous pharmacomechanical thrombolysis followed by angioplasty of the left common femoral vein and she was discharged on April 8, 2012 (Tr. 597-604, 638-39). At a follow-up appointment on April 12, 2012, the claimant reported increased swelling and pain in her left leg and her provider noted she did not pick up her vitamins and was not wearing therapeutic stockings as directed (Tr. 590). The claimant indicated she was trying to elevate her leg as much as possible but had to take care of her children and was preparing for an upcoming meeting with the governor (Tr. 590). She also indicated she was not taking her medication as prescribed (Tr. 581). The claimant was admitted to the hospital for full anticoagulation and discharged as hemodynamically stable two days later (Tr. 580-85, 588).

As to her mental impairments, William Cofield, Jr., Psy.D examined the claimant on April 16, 2007 in connection with an upcoming bariatric surgery (Tr. 1207-09). Dr. Cofield noted the claimant described some situational anxiety over her husband's deployment in Iraq, but her mental status exam was normal (Tr. 1208). Dr. Cofield

-5-

diagnosed the claimant with adjustment disorder with anxious symptoms, noting, *inter alia,* that she did not present with any evidence of severe or acute psychopathology and may wish to see a counselor regarding her situational stress (Tr. 1209).

On September 12, 2010, the claimant was hospitalized for intentionally ingesting medication in an apparent suicide attempt driven by frustration with her husband and worn down by the stressors of life (Tr. 1026-36). Her four and sixteen-hour acetaminophen levels were below toxic concerns (Tr. 1026). She was assessed with marital problems and insightfully indicated her need for individual and marital counseling (Tr. 1036). Her treating physician specifically stated psychotropic medication was not indicated but did recommend counseling (Tr. 1036).

State agency physician Dr. Chelsie McKenzie and State agency psychologist Gayle Frommelt, Ph.D. reviewed the record in August 2016 and found the claimant's obesity and affective disorders were nonsevere (Tr. 62). They then determined that there was insufficient evidence to fully evaluate the claimant's claims and that the evidence needed could not be obtained (Tr. 61-64). They thus concluded that the claimant's conditions were not disabling on any date through June 30, 2012, her date last insured (Tr. 64). In reaching such conclusion, Dr. Frommelt noted the only two mental health-related treatment notes in the record prior to the claimant's date last insured as discussed above (Tr. 61).

In her written opinion at step two, the ALJ noted the claimant alleged lupus, lung cancer, migraines, chronic anemia, osteoarthritis, fibromyalgia, and depression as her disabling impairments (Tr. 22). She found the claimant's alleged lupus and fibromyalgia were not medically determinable during the relevant period because the record contained

-6-

no evidence of these impairments from an acceptable source (Tr. 22). Similarly, the ALJ noted the presence of a pulmonary nodule during the relevant period, but found no malignancy identified anywhere in the record (Tr. 22). As to the claimant's lumbar degenerative disc disease and degenerative joint disease, the ALJ indicated providers were ruling out these impairments in September 2012, which she found indicative of a nonmedically determinable impairment during the relevant period (Tr. 22). The ALJ then found the claimant's "other alleged impairments," that is her migraines, chronic anemia, osteoarthritis, and depression, were medically determinable impairments, but nonsevere (Tr. 22). At step four, the ALJ summarized the evidence as to the claimant's severe impairments, noting her entire course of treatment for deep vein thrombosis during the relevant period, but the ALJ did not mention or discuss the claimant's nonsevere impairments (Tr. 22-25).

    The claimant first contends that the ALJ erred at step two by failing to discuss the severity of her lupus, lung cancer, migraines, chronic anemia, osteoarthritis, fibromyalgia, and depression, but this is not borne out by the record as set forth above. In any event, this Court and the Tenth Circuit have repeatedly held, "[o]nce the ALJ finds that the claimant has *any* severe impairment, [s]he has satisfied the analysis for purposes of step two. H[er] failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008). Thus, even assuming *arguendo* that the ALJ erred by not finding these impairments severe, such error was harmless because she found the claimant had other severe impairments at step two.

The ALJ is, however, required to consider all of a claimant's impairments—both severe and nonsevere—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'"), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But the claimant does not point to any evidence in the record showing that her nonsevere impairments, either individually or in combination with her other impairments, caused functional limitations during the relevant time period of July 5, 2011, her alleged onset date, and June 30, 2012, her date last insured. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work). Notably, there is no evidence of any treatment for osteoarthritis or depression until after the claimant's date last insured, and the only evidence related to her migraines during the relevant period is prescription refills made at her request and her report that such medication effectively treats her migraines (Tr. 468, 475, 768). The ALJ also correctly noted that the claimant did not adhere to her prescribed medication regimen, including the vitamins prescribed for her chronic anemia (Tr. 22, 25).

The claimant next contends that the ALJ erred in her RFC assessment because she failed to account for limitations related to her severe obesity and deep vein thrombosis. The Court finds that the ALJ did not, however, commit any error in her analysis. As discussed above, the ALJ noted and fully discussed the findings of the claimant's various physicians and her opinion clearly indicates that she adequately considered the evidence in reaching her conclusions regarding the claimant's RFC. *See Hill,* 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). As the ALJ correctly noted, the claimant performed medium work before her bariatric surgery and significant weight loss, and her deep vein thromboses were successfully treated, although treatment was likely prolonged due to repeated noncompliance (Tr. 24). Furthermore, the claimant did not raise obesity as a severe impairment in her application for benefits or at the administrative hearing, but more importantly, she does not point to any evidence showing her obesity exacerbated her other impairments. *See Callicoatt v. Astrue,* 296 Fed. Appx. 700, 702 (10th Cir. 2008) ("Without some evidence that her obesity was relevant to her other alleged impairments during the relevant time frame, the ALJ was not required to consider the claimant's obesity.").

The claimant next contends that the ALJ erred in assessing her subjective statements of pain because the ALJ made no specific findings and failed to include nonexertional

limitations in the RFC to account for her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In discussing the claimant's subjective pain, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 23). In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements of pain and the medical and other evidence of record, including: (i) her repeated noncompliance with treatment, (ii) physical examinations showing a normal gait, stance, balance, and strength, (iii) the lack of objective medical evidence, (iv) her successful performance of medium work when she was significantly more obese, and (v) successful treatment of her deep vein thromboses (Tr. 24). Thus, the ALJ linked her subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's

-11-

medical evidence taken as a whole, and her evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant contends that the ALJ failed to include all her limitations in the hypothetical question posed to the VE. Specifically, she asserts that the hypothetical question should have included limitations for her depression, obesity, and deep vein thrombosis. However, as set forth above, the ALJ clearly considered these impairments. Furthermore, the claimant does not point to any evidence supporting the additional limitations she claims. Accordingly, the ALJ was not required to include additional limitations in her RFC assessment, or in her hypothetical question posed to the VE. *See Qualls,* 206 F.3d at 1373 ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in h[er] RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). *See also Adams v. Colvin,* 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls,* 206 F.3d at 1372.

When all the evidence is taken into account, the Court is satisfied that the ALJ's conclusion that the claimant could perform the assigned RFC is supported by substantial evidence. The ALJ specifically noted the medical records available in this case, gave reasons for her RFC determination, and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to

point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [she] can determine RFC within that category.'"), *quoting Howard* 379 F.3d at 949. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 30th day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**